J-A12045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEN ANDREW KOVALESKI, | |
| Appellant | No. 1117 MDA 2014 |

Appeal from the Judgment of Sentence entered July 2, 2014,
in the Court of Common Pleas of Lackawanna County,
Criminal Division, at No(s): CP-35-CR-0002000-2012

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 30, 2015**

Ken Andrew Kovaleski ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of rape and related charges.[1] We affirm.

The trial court summarized the pertinent facts as follows:

> The incidents were alleged to have begun in June of 2011.  During the evening, the victim, [N.K.] was asleep in her bedroom.  [She was fifteen years old at the time.]  At some point, she awoke to find her adoptive father, [Appellant], covering her mouth with his hand.  [Appellant] then told [N.K.] to be quiet and proceeded to kiss and touch her all over her body.  After taking [N.K.'s] pajama shorts off, the victim testified that [Appellant] performed oral sex on her, penetrated her vagina with his fingers, and had sexual intercourse with her, despite her whimpering in pain.

---

[1] 18 Pa.C.S.A. § 3121.

Despite only performing intercourse on one occasion, [Appellant] continued to sexually abuse [N.K.] periodically over the course of the next year. Namely, [Appellant] would perform oral sex on [N.K.], penetrate her vagina with his fingers, or masturbate in front of her. Whenever [N.K. threatened to disclose the abuse, [Appellant] reprimanded her, telling her no one would believe her due to his close relationship with various prosecutors and police officers throughout the county. [Appellant was a licensed attorney and had been employed in the Lackawanna County Public Defender's Office.] He also convinced her that no one would believe her since she had not disclosed the abuse after the initial assault, and there would be no physical evidence remaining from that one and only instance of intercourse to support her allegation.

At some point in July 2012, upon learning that the victim had snuck out of their Jessup, PA residence in the middle of the night to meet a boy from school and had engaged in sexual acts with this boy, [Appellant] threatened her and grabbed her throat. The day after this altercation, while at a golf course in Scott Township with [Appellant] and his wife, [], and their other children, [N.K.] ran away and hitchhiked to her sister's house in Forest City and disclosed the abuse to her sister. Upon hearing of the abuse, [N.K.'s] sister, [R.M.], took her to the Forest City Police Station to report the abuse. When [N.K.] and her sister were walking toward the police station, they observed [Appellant] and his wife there as well. After a scuffle at the police station between [N.K.] and [Appellant's] wife during which [Appellant's] wife tackled [N.K.] to the ground, [Appellant] and his wife were sent home by the police, and [N.K.] was placed in emergency foster care with her aunt and uncle in Montrose. Pursuant to the police investigation, [N.K.] was interviewed and examined at the Children's Advocacy Center ("CAC") in Scranton. [Appellant] was arrested on or about July 17, 2012.

Trial Court Opinion, 9/2/14, at 2-4 (citations and footnote omitted).

Prior to trial, the trial court granted the Commonwealth's motion *in limine*, which sought to present the testimony of M.B., a then twenty-nine

year old woman who later testified that Appellant sexually assaulted her when she was fifteen.[2]  Following a two-day trial, on February 26, 2014, a jury convicted Appellant of rape and related charges.  On July 2, 2014, the trial court accepted the parties' stipulation that Appellant was a sexually violent predator, and the court sentenced him to an aggregate term of twenty-one to forty-two years of imprisonment.  This timely appeal followed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

> 1.  Whether the trial court erred and abused its discretion in allowing the Commonwealth to introduce [] evidence of other alleged crimes, wrongs or acts pursuant to [Pa.R.E.] 404(B).
>
> 2.  Whether the trial court erred and abused its discretion in not allowing evidence to be introduced with regard to psychological medication prescribed to the [victim].
>
> 3.  Whether the trial court erred and abused its discretion by not allowing Appellant to call a medical professional who had treated the [victim] and would testify to a lack of indications for sexual assault.

Appellant's Brief at 3.

Each issue raised by Appellant challenges the trial court's ruling on evidentiary matters.  Our standard of review is well settled:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion.  An abuse of discretion may not be found merely

___

[2] Appellant was never arrested or criminally charged in relation to this incident.

because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402[.]

*Commonwealth v. Dillon*, 925 A.2d 131, 136-37 (Pa. 2007).

After careful review of the record and pertinent case law, we conclude that the Honorable Margaret A. Bisignani Moyle has prepared a thorough and well-reasoned opinion in which she explains her evidentiary rulings, while acknowledging the potential prejudice and fairness considerations for both Appellant and the Commonwealth.

More specifically, with regard to Appellant's first issue, our review of the record and case law supports Judge Bisignani Moyle's decision to admit the evidence of Appellant's prior assault despite its remoteness. *See e.g.*, *Commonwealth v. Arrington*, 86 A.3d 831, 841-845 (Pa. 2014) (concluding that the probative evidence of the defendant's prior crimes toward ex-girlfriends to show common scheme to control through violence and intimidation outweighed prejudicial effect to the defendant from its admission). Our conclusion is further supported by the fact that Judge Bisignani Moyle thrice warned the jury with regard to the limited use of this evidence. *See id.* (explaining that the law presumes a jury will follow the instructions of the court).

As to Appellant's remaining issues, our review of the record supports our determination that Judge Bisignani Moyle properly weighed the potential of prejudice to both parties and reasonably dealt with these concerns in limiting Appellant's cross-examination of the Commonwealth's medical witness, and in arriving at a stipulation regarding Appellant's proposed medical witness. This is especially true, given the sensitive inquiry regarding a victim's psychiatric treatment. *See generally*, *Commonwealth v. Boich*, 982 A.2d 102 (Pa. Super. 2009) (*en banc*).

A criminal defendant is entitled to a fair trial, not a perfect one. *Commonwealth v. Noel*, 14 A.3d 1156, 1169 (Pa. 2014) (citation omitted). Although Appellant was not able to present his defense as completely as he wished, after reviewing the record and pertinent case law, we conclude that in her September 2, 2014 opinion, Judge Bisignani Moyle correctly explains why Appellant's claims do not entitle him to relief. We therefore adopt Judge Bisignani Moyle's opinion as our own in affirming Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/2015

A12043-13
Redacted + C/O

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON<br>: PLEAS OF LACKAWANNA COUNTY<br>:<br>: |
| v. | :<br>:<br>: |
| | : CRIMINAL DIVISION |
| KENNETH KOVALESKI | :<br>: |
| Defendant | : 2012 CR 2000 |

## MEMORANDUM OPINION PURSUANT TO Pa. R. A. P. 1925(a)

Bisignani Moyle, J.

## INTRODUCTION AND PROCEDURAL HISTORY

The instant action arises out of the above-referenced Defendant's criminal jury trial before this Court, which took place from the 24th to the 26th of February 2014. As a result of that trial, the Defendant was convicted of one (1) count each of Rape by Forcible Compulsion, Statutory Sexual Assault, Incest, Involuntary Deviate Sexual Intercourse on a Person Less than Sixteen (16) Years of Age, Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Unlawful Contact with a Minor, Aggravated Indecent Assault on a Person Less than Sixteen (16) Years of Age, Endangering the Welfare of Children, Corruption of Minors, and Indecent Assault. 18 Pa.C.S.A. §§ 3121, 3122.1, 3123, 3125, 3126, 4302, 4304, 6301, and 6318. Due to an error in the verdict slip, the charge of Unlawful Contact with a Minor was discharged before the Defendant was sentenced.

1

A4.

On July 2, 2014, this Court found, as was stipulated to by both the Commonwealth and the Defendant, that the Defendant is a sexually violent predator, pursuant to 42 Pa.C.S.A. § 9799.24(e), and sentenced the Defendant to serve an aggregate sentence of twenty-one (21) to forty-two (42) years in a State Correctional Institute.

That same day, the Defendant filed with this Court a Notice of Appeal, as to both his conviction and the sentence he received. In conjunction with his Notice of Appeal, the Defendant also filed a Motion for Bail Pending Appeal, which was denied. On August 11, 2014, after being directed to do so by this Court, the Defendant filed a Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b). This Court will now briefly address each issue raised by the Defendant on appeal as required under Pa.R.A.P. 1925(a).

I. FACTUAL BACKGROUND

The evidence offered at trial and in various pretrial proceedings demonstrated as follows:

The incidents were alleged to have begun in June of 2011. During the evening, the victim, _____ , was asleep in her bedroom[1]. At some point, she awoke to find her adoptive father, Kenneth Kovaleski (hereinafter "Defendant"), covering her mouth with his hand. (N.T. 02/24/2014 at pgs. 67-68, 109); (N.T. 08/29/2012 at pg. 9). The Defendant then tol _____ to be quiet and proceeded to kiss and touch her all over her body. (N.T. 02/24/2014 at pg. 68). After taking pajama shorts off, the victim testified that the Defendant performed oral

---

[1] Nicolette was fifteen (15) years old at the time of the first incident.

2

A5.

sex on her, penetrated her vagina with his fingers, and had sexual intercourse with her, despite her whimpering in pain. (Id. at pgs. 68-70).

Despite only performing intercourse on one occasion, the Defendant continued to sexually abuse     periodically over the course of the next year. (Id. at pgs. 72-76). Namely, the Defendant would perform oral sex on     , penetrate her vagina with his fingers, or masturbate in front of her. (Id. at 72-74). Whenever     threatened to disclose the abuse, the Defendant reprimanded her, telling her no one would believe her due to his close relationship with various prosecutors and police officers throughout the county.[2] (Id. at pgs. 70, 103). He also convinced her that no one would believe her since she had not disclosed the abuse after the initial assault, and there would be no physical evidence remaining from that one and only instance of intercourse to support her allegation. (Id. at pg. 74).

At some point in July of 2012, upon learning that the victim had snuck out of their Jessup, PA residence in the middle of the night to meet a boy from school and had engaged in sexual acts with this boy, the Defendant threatened her and grabbed her throat. (Id. at pgs. 78-80). The day after this altercation, while at a golf course in Scott Township with the Defendant and his wife,     , and their other children,     ran away and hitchhiked to her sister's house in Forest City and disclosed the abuse to her sister. (Id. at pgs. 80-81). Upon hearing of the abuse,     sister,     , took her to the Forest City Police Station to report the abuse. (Id. at pgs. 81-83). When     and her sister were walking toward the police station, they observed the Defendant and his wife there as well. (Id. at pg. 84). After a scuffle

---

[2] The Defendant was a licensed attorney and had been employed in the Lackawanna County Public Defender's Office.

3

A6.

at the police station between ⸻ and the Defendant's wife during which the Defendant's wife tackled ⸻ o the ground, the Defendant and his wife were sent home by police, and ⸻ was placed in emergency foster care with her aunt and uncle in Montrose. (Id. at pgs. 84-86). Pursuant to the police investigation, ⸻ vas interviewed and examined at the Children's Advocacy Center ("CAC") in Scranton. The Defendant was arrested on or about July 17, 2012. (N.T. 02/25/2014 at pgs. 38-50).

## DISCUSSION

### A. This Trial Court Did not Err in Granting the Commonwealth's Motion to Permit Introduction of Evidence of Other Crimes, Wrongs or Acts pursuant to Rule 404(b)

On appeal, the Defendant has raised four (4) claims. The first of the Defendant's four (4) claims alleges that the court erred in granting the Commonwealth's Motion *in Limine* pursuant to Pa.R.E. 404(b)(2) to permit the testimony of ⸻, twenty-nine (29) years old at the time of her testimony, testified that the Defendant sexually assaulted her when she was fifteen.[3] (N.T. 02/25/2014 at pgs. 68-76). ⸻ stated that she came forward with her experience after seeing news coverage of the Defendant's arrest. (Id. at pgs. 68-69). First, she sent an anonymous email to the news station that had covered the story, WNEP, who then forwarded the email to Det. Chris Kolcharno of the Lackawanna County District Attorney's Office, who was the lead investigator on the Defendant's

---

[3] The Defendant was never arrested or charged in connection with this incident.

4

A7.

case. (_Id._ at pgs. 69-71).[4] Detective Kolcharno was able to identify and locate Ms. _____ through an investigative subpoena.

During the trial, _____ recounted details of the Defendant assaulting her. (_Id._ at pgs. 72-76). _____ stated that the incident occurred when she was fifteen (15) years old, on a weekend trip that she took to Connecticut with the Defendant, her sister and a friend, who is a cousin of the Defendant's. (_Id._ at pgs. 70, 72). According to _____ he Defendant drove her and the other girls back and forth between Pennsylvania and Connecticut that weekend. (_Id._ at pg. 72). While _____ and the other girls were visiting the Defendant that weekend, _____ stated the Defendant, who was over the age of twenty-one (21) at the time, purchased alcohol for and consumed alcohol with all of the girls and took them to a party where they all consumed alcohol together. (_Id._ at pgs. 72-74). After the party, the Defendant took the girls back to his apartment, where they spent the night in his living room, sleeping on different portions of a sectional couch. (_Id._ at pgs. 74-75). It was there, _____ said, that she was awakened by feeling the Defendant's hand down her pants. (_Id._ at pg. 75). Then, according to _____ the Defendant penetrated her vagina with his fingers, pulled down her pants, and performed oral sex on her. (_Id._). When the Defendant attempted to penetrate her vagina with his fingers again, _____ kicked him away and rolled over, pretending to be asleep. (_Id._). The following morning, _____ stated that she told her sister and friend that the Defendant had done something to her, and the Defendant took the girls home. (_Id._ at pgs. 75-76).

---

[4] This trial court found Ms _____ reluctance to come forward compelling, as it indicated she did not have ulterior motives against Mr. Kovaleski.

A8.

Under Pennsylvania law, evidence of a prior crime, wrong, or other bad act is generally not admissible to prove a person's character trait in order to show that he or she acted in accordance with that trait on a particular occasion. Pa.R.E. 404(b)(1). *See also* Commonwealth v. O'Brien, 836 A.2d 966, 969 (Pa.Super. 2003). However, such evidence is admissible for other purposes, including but not limited to proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Pa.R.E. 404(b)(2). Additionally, in criminal cases, such evidence is only admissible if its probative value outweighs its potential for unfair prejudice. Id.

Even more specifically, with respect to criminal cases where crimes involving sexual acts are charged, the admissibility of prior crimes, wrongs, or other bad acts of the defendant involving incidents of sexual assault, regardless of whether they have resulted in convictions, is heavily scrutinized under this line of legal analysis. Commonwealth. v. Gordon, 673 A.2d 866, 869 (Pa. 1996); Commonwealth v. Seiders, 614 A.2d 689, 691 (Pa. 1992).

In Gordon, the defendant, an attorney, was charged with Indecent Assault for allegedly rubbing his penis against the backside of a female client. Gordon, 673 A.2d at 867, 869. In a *Motion in Limine*, the Commonwealth sought to introduce evidence of two (2) of the defendant's prior convictions for Indecent Assault, involving similar incidents from another county, under the common plan, scheme, or design theory of Pa.R.E. 404(b)(2). Id. at 867. The trial court denied the motion, so the Commonwealth appealed to the Pennsylvania Superior Court, which reversed the

6

A9.

decision of the trial court to exclude the evidence. Id. Gordon then appealed that decision to the Pennsylvania Supreme Court. Id.

In considering Gordon's claims on appeal, the Court examined all of the circumstances surrounding each of his prior Indecent Assault convictions and compared them to those of the incident concerning the Indecent Assault charges that he was currently facing at that time, finding seven (7) similarities between them. Id. at 869. Such similarities included the manner of each assault, as well as the amount of time between the two (2) prior convictions and the recent charges. Id. After conducting this thorough analysis, the Court affirmed the decision directly below, holding not only that the prior convictions bore enough similiarities to the charges the defendant currently faced, but also that this evidence was vital to the Commonwealth's case against the defendant, such that the evidence should have been admitted. Id. at 869-70.

Here, like in Gordon, the Commonwealth introduced       testimony against the Defendant at trial under the common plan, scheme, or design theory of Pa.R.E. 404(b)(2), arguing that there were enough significant similarities between the assault the Defendant committed or       and the assaults he committed on       to make the incident admissible, despite its potential to prejudice the Defendant. (N.T. 03/08/2013 at pgs. 35-45). This Court agrees. In examining the details of both assaults, the striking similarities between them are as follows: 1.) Both victims were female; 2.) Both victims were fifteen (15) years old at the time of their assaults; 3.) The Defendant was in a custodial or quasi-custodial relationship with each victim at the times of the assaults; 4.) Both victims were in vulnerable states:

having recently lost her mother, and          having formerly been a foster child, at the time of their assaults; 5.) The sexual acts performed by the Defendant, oral sex and digital penetration of the vagina, were identical in each incident; 6.) The Defendant disrobed each of the victims while assaulting them, pulling their pants off; 7.) All assaults occurred at night; 8.) All assaults occurred when the victims were asleep; 9.) Both victims were awoken from sleep by the Defendant during their assaults; and 10.) All assaults occurred where the Defendant resided. (N.T. 02/25/2014 at pgs. 72-76); (N.T. 02/24/2014 at pgs. 67-74).

In its analysis, this Court was required to consider not only the commonality in the perpetrators' actions, but the commonality in the location of the crimes, (here the defendant's home), the commonality of the relationship between the defendant and the victims (here custodial or quasi-custodial). Commonwealth v. Newman, 598 A.2d 279, 279 (Pa. 1991).

Under Pa. R.E. 404(b), this Court must also consider not only the commonality in the perpetrator's actions, but also the remoteness of the evidence. In evaluating the approximate twelve (12) year span between the assaults, the court was guided by Commonwealth v. O'Brien, supra and Commonwealth v. Lukitsch, 680 A.2d 877 (1996).

In O'Brien, the Commonwealth sought to introduce evidence of other offenses pursuant to Pa. R.E. 404(b) that had occurred approximately eleven (11) and fourteen (14) years prior. Citing Commonwealth v. Newman, 598 A.2d 275 (Pa. 1991), the Superior Court held that the "remoteness in time between a distinct offense is but another factor to be considered". O'Brien, 836 A.2d at 971. The Court further

8

**A11.**

opined, "the importance of the time period is inversely proportional to the similarity of the crimes in question". Id. (citations omitted). Further, in Luktisch, 451 Pa.Super. 500, 680 A.2d 877 (1996), the Superior Court held that evidence of sexual molestation by defendant that occurred fourteen years prior to the crime presently charged was admissible under the common, scheme, plan, design or course of conduct exception to the general rule that evidence of uncharged acts is inadmissible against defendant. Lukitsch, 680 A.2d at 879.

In the instant matter, both sexual offenses are far too similar, opportunistic, and symptomatic of the Defendant's "mark" for the court to discount its substantiating value. Counsel's arguments of remoteness in favor of its exclusion were undermined by the unique signature borne of the custodial/quasi-custodial relationship enjoyed by the Defendant. Additionally, the other the striking similar characteristics regarding the victim's age, their having been asleep at the time of the assault, the manner in which both were assaulted by digital penetration followed by oral sex, and each having occurred in the Defendant's residence, combine to reveal a certain formula indicative of a common plan, scheme or design utilized by the Defendant.

Further, any potential prejudice in admitting the evidence of the earlier assault was eclipsed by the probative value o          testimony, seeing as the bulk of the Commonwealth's evidence against the Defendant consisted o uncorroborated testimony and the Defense continually attempted to challenge credibility. In Commonwealth v. Ardinger, 839 A.2d 1143, 1145 (Pa. Super. 2003), the Superior Court held that in deciding whether to admit evidence based on its probative value and potential for undue prejudice, courts must balance

9

A12.

the rights of the defendant with the Commonwealth's need to present the evidence. In the case before this trial court, this evidence was necessary for the Commonwealth to bolster corroborate _____ testimony against the Defense's attacks on credibility. In conclusion, this trial court properly admitted to establish a common scheme, plan, or relevant design and thus bolster the victim's credibility. O'Brien, 836 A.2d at 971. Thus, we conclude the _____ testimony was properly admitted at trial.

B. **This Trial Court Did Not Err in Precluding Testimony with Regard to Psychological Medication Prescribed to Complainant and Did Not Err in Precluding the Defense to Present Evidence to the Jury of the Complainant's Mental Health Issues**

The second issue addressed by the Defendant in his appeal relates to the court's refusal to allow "testimony with regard to psychological medication prescribed to the complainant". Similarly, on Defendant's third issue in his appeal, the Defendant takes issue with the court's refusal to present evidence of the "complainant's mental health issues". Since these two issues are governed by the same statutory and case law, we will address them singularly.

During its case in chief, the Commonwealth called Dr. Sandra Federo to the witness stand. Dr. Federo is employed as a nurse practitioner at the Children's Advocacy Center in Scranton, Pennsylvania (N.T. 02/25/2014 pg. 83). Dr. Federo examined ` ` on July 6, 2012. (N.T 02/26/2014 pg. 91). The examination was a forensic examination and included a medical history of (N.T. 02/26/14 pg. 111). Included in the report, prepared by Dr. Federo is a self report by Ms. _____ regarding her psychiatric history. (N.T. 02/26/14 pg. 143). Ms. _____ reported to Dr. Federo that "she has been treated for a mood disorder

10

A13.

in the past." *Id.* Additionally, the report states that Ms         is prescribed Seroquel and Lamictal. (N.T. 02/26/14 pg. 112).

On cross examination, the defense attorney asked Dr. Federo the following question: "Did you question her on why she was taking medications for schizophrenia?" (N.T. 02/26/14 pg. 111). The Commonwealth posed an objection. A lengthy conversation then took place on the record outside of the presence of the jury. (N.T. 02/26/14 pg. 111). When the jury returned, this Court struck the question and answer concerning medication and "schizophrenia." (N.T. 02/26/14 pg. 159). This Court permitted the defense attorney to ask Dr. Federo the following question: "Did she ,    } divulge to you (Dr. Federo), that she suffered from a mood disorder?" (N.T. 02/26/14 pg. 160). This Court also permitted Attorney Henry to ask Dr. Federo about Complainant's medications. (N.T. 02/26/14 pg. 159). However, defense counsel chose not to ask this question.

After reviewing Defendant's Concise Statement of Errors Complained of on Appeal in Accordance with to Pa. R.A.P. §1925(b), this Court is not sure what testimony the Defense sought to introduce or was precluded from introducing. Thus, the Court will address this Court's ruling that precluded Defendant from asking specifically about schizophrenia. However, the Court notes that Defendant's Concise Statement of Errors Complained of on Appeal in Accordance with to Pa. R.A.P. §1925(b) is misleading, as this Court allowed the Defendant, as stated above, to ask Dr. Federo about Nicolette's alleged mood disorder (N.T. 02/26/14 pg. 160 and this Court also permitted Attorney Henry to ask Dr. Federo about Complainant's medications.

11

A14.

The threshold inquiry with admission of evidence is whether the evidence is relevant. Commonwealth v. Robinson, 721 A.2d 344, 350 (1998). Pa.R.E. 402 provides that all relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant under Pa. R.E. 401 if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. However, relevance does not mean evidence is automatically admissible; such evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. Robinson, 721 A.2d at 350. Relevant evidence may nevertheless be excluded 'if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Commonwealth v. Broaster, 863 A.2d 588, 592 (Pa.Super.2004).

Evidence of a witness' mental health is only relevant and admissible if it is relatable to the subject of the litigation or if it affects the testimonial ability of the witness. Commonwealth v. Butler, 331 A.2d 678, 680 (Pa. Super. 1974). The crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness's mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him. Commonwealth v. Dudley, 510 A.2d 1235, 1238 (1986)(holding that hospitalization for hallucinations that occurred six months before trial would be an issue for the jury to consider when determining a witness' credibility). The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in

12

**A15.**

some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime. Id.

The case law cited above makes clear that if the mental health of the witness is not related to the subject of the litigation or the testimonial ability of the witness, the evidence is not admissible and can be unduly prejudicial as well as confusing and misleading to the jury. During Complainant's testimony, the Complainant did not demonstrate an inability to remember or recall details about the criminal acts Complainant alleged the Defendant committed. Further, the Defendant could produce no information that the Complainant was on medication for schizophrenia at the time of the occurrence of the criminal acts or whether Complainant was on medication for schizophrenia at all. Finally, in order to allow Defendant the widest latitude without misleading the jury or bringing in inadmissible evidence regarding Complainant's mental health, this Court permitted Defense counsel to ask questions regarding Complainant's mood disorder and Complainant's medication. This Court only precluded Defendant from mentioning schizophrenia, as this term, without a proper basis for questioning Complainant's mental health, would be inadmissible, as well as misleading and confusing to the jury.

**C. This Trial Court Did Not Err in Excluding Defendant's Request to Allow Complainant's Mental Health Provider to Testify That as a Standard Practice, He Performed Numerous Sex Abuse Evaluations on the Complainant, All of Which were Negative for Signs of Abuse.**

13

**A16.**

The last of Defendant's four (4) claims on appeal alleges that this Court, the trial court, erred "in not allowing the defense to call the complainant's mental health provider, who would have testified that as a standard practice, he performed numerous sex abuse evaluations on the complainant, all of which were negative for signs of abuse."

In the case at hand, Defendant sought to call Dr. John Seasock to testify as a Defense witness. Defendant wanted to ask Dr. Seasock a series of questions relating to his treatment of                         These questions included: (1) Are you a medical doctor? (2) Are you a mandated reporter for sexual abuse? (3) Is it your practice to give your patients a physical and a sexual abuse assessment? (4) Did you make a report of suspected sexual abuse regarding                         ' (N.T. 02/26/2014 at pgs. 9-10; 25). The Commonwealth objected to the third proposed question as lacking in relevance and misleading to the jury. (N.T. 02/26/2014 at pgs. 9-13). After Defense Counsel and Counsel for the Commonwealth engaged in a lengthy argument before this Court on this point, this Court sustained the Commonwealth's objection to the Defendant's third proposed question. (N.T. 02/26/2014 at pg. 23). This Court held that Defendant could call Dr. Seasock and ask him Defendant's other proposed questions, but held that he could not ask about the sexual assessment. (N.T. 02/26/2014 at pg. 23). After this Court sustained the objection, the Defendant and the Commonwealth stipulated that Dr. Seasock is a health care professional, that he is required to report suspected child abuse and he did not make a report of suspected child abuse regarding                         and his

14

A17.

failure to do so was not a violation of his duties as a mandated reporter. (N.T. 02/26/2014 at pgs. 25-26 ).

As set forth above and duplicated herein, the threshold inquiry with admission of evidence is whether the evidence is relevant. Commonwealth v. Robinson, 721 A.2d 344, 350 (1998). Pa.R.E. 402 provides that all relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant under Pa. R.E. 401 if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. However, relevance does not mean evidence is automatically admissible; such evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. Robinson, 721 A.2d at 350. Relevant evidence may nevertheless be excluded 'if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Commonwealth v. Broaster, 863 A.2d 588, 592 (Pa.Super.2004).

First, this Court agrees with the Commonwealth's position that the question regarding Dr. Seasock's standard practice of performing sexual assessments on his patients lacks relevance or if relevant, its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Throughout the course of the argument on this issue with the Defendant's Attorney and the Attorney for the Commonwealth, the Defendant's Attorney's did not provide any information about the sexual assessments, the conditions under which they were given and who else, if anyone, was in the room with Ms

15

A18.

at the time of the assessment. Additionally, the Commonwealth would not stipulate to any facts regarding the sexual assessments stating Ms          has not waived her privilege. (N.T. 02/26/2014 at pgs.17-18). Finally, the defense attorney admitted that he has been unable to obtain any information from Dr. Seasock regarding the sexual assessments because the privilege had not been waived by Ms          (N.T. 02/26/2014 at pgs.7-9; 20). For example, the Defendant's Attorney specifically stated that he did not know if Dr. Seasock was an M.D. or a Ph.D. (N.T. 02/26/2014 at pg. 9). The Defendant's Attorney could not state whether it was family therapy or individual therapy because he could not run afoul of the Complainant's privilege. (N.T. 02/26/2014 at pgs 7).

Without the additional information surrounding the assessment being administrated on Ms.          this Court was without sufficient information to weigh and evaluate the probative value versus the prejudicial effect of the testimony. Additionally, the proffered testimony would have been put before the jury in a vacuum, leaving many unanswered questions. This led this Court to conclude that absent a waiver, the information would tend to mislead and confuse the jury.

Second, in conjunction with sustaining the Commonwealth's objection due to confusion of the issues and misleading of the jury, this Court holds that, Defendant's proposed question is inadmissible because any question regarding Complainant's sexual assessment is protected by Complainant's privilege under 42 Pa.C.S.A § 5944. Any sexual assessment of Complainant was a confidential communication/relation between the Complainant and a psychiatrist/licensed psychologist.

A19.

42 Pa.C.S.A § 5944 provides that:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

This statutory privilege is intended to inspire confidence in the client and encourage full disclosure to the psychiatrist. Commonwealth v. Fewell, 654 A.2d 1109, 1112 (1995). The statute governing the psychiatrist-patient privilege prohibits disclosure by the psychiatrist during a civil or criminal matter without the client's written consent. Commonwealth v. Appleby, 856 A.2d 191, 199 (Pa. Super.2004). Pennsylvania Courts have consistently held that evaluations undertaken for treatment purposes are absolutely privileged under 42 Pa.C.S.A. § 5944. In the Interest of Bender, 531 A.2d 504, 505 (1987). It is only when the evaluations are not completed for treatment purposes that disclosures made therein would not be privileged under the psychiatrist/patient privilege. Commonwealth v. Moody, 843 A.2d 402, 406 (Pa. Super.2004).

The proposed question to Dr. Seasock by Defendant about Complainant's sexual assessment is inadmissible because it violates Complainant's privilege under 42 Pa.C.S.A § 5944 and Complainant did not waive her privilege. Simply, Complainant had an expectation of privacy and a privilege to keep the communications between herself and Dr. Seasock from anyone else. These communications included the occurrence of a sexual assessment of Complainant by Dr. Seasock. By seeking to ask if Dr. Seasock performed sexual assessments as part

17

A20.

of his standard practice and then asking if Dr. Seasock was a mandated reporter, Defendant was seeking to get around Complainant's privilege and have the jury deduce that a sexual assessment of Complainant took place and that the assessment did not uncover the alleged abuse. This Court holds that this attempt to elicit testimony regarding the sexual assessment of Complainant is protected by privilege under 42 Pa.C.S.A § 5944. Further, this privilege goes hand in hand with the misleading and confusing nature of the assessment because the privilege rendered information about the assessment unavailable to Defense counsel and thus, would have placed the assessment in front of the jury in a vacuum. Because Complainant did not waive her privilege, Defense Counsel could not present the Court with details about the assessment thus rendering the assessment misleading and confusing to the jury.

Finally, Defense Counsel states in his Concise Statement of Errors Complained on in Appeal that "the lower court erred in not allowing the defense to call the complainant's mental health provider, who would have testified that as a standard practice, he performed numerous sex abuse evaluations on the complainant, all of which were negative for signs of abuse." (Defendant's Concise Statement of Appeal at pg. 2). This Court permitted Dr. Seasock to testify, however, this Court simply prohibited questions regarding the sexual assessment based on the aforementioned reasons. After this Court sustained the objection, the Defendant and the Commonwealth entered the above referenced stipulation. Thus, the Court did not preclude the Defendant from calling Complainant's mental health provider, the Court

18

A21.

afforded Defendant every opportunity to do so, but simply upheld Complainant's rights under her privilege regarding questions involving the sexual assessment.

## CONCLUSION

In conclusion, the Defendant's request for relief should be denied.

BY THE COURT:

_____ J.

A22.